UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ANDRE BOYNTON, | ) | Case No. 1:12CV263 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| MICHAEL SHEETS, WARDEN, | ) | **Report and Recommendation** |
| | ) | **of Magistrate Judge** |
| | ) | |
| Respondent. | ) | |
| | ) | |

On January 26, 2012[1], Petitioner Andre Boynton ("Petitioner"), acting *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. ECF Dkt. #1. Petitioner seeks relief for alleged constitutional violations that occurred during his trial in the Cuyahoga County, Ohio Court of Common Pleas, where he was convicted of two counts of sexual conduct with a minor in violation of Ohio Revised Code ("ORC") §2907.04(A). ECF Dkt. #7-1 at 1. On June 11, 2012, Respondent Michael Sheets ("Respondent"), Warden of Warren Correctional Institution, where Petitioner is incarcerated, filed an answer/return of writ. ECF Dkt. #7. No traverse was filed, however a lengthy memorandum of law in support was attached to the petition. For the following reasons, the undersigned RECOMMENDS that the Court DISMISS the petition in its entirety with prejudice:

I.   **SYNOPSIS OF THE FACTS**

The Eighth District Court of Appeals of Ohio set forth the relevant facts on direct appeal. ECF Dkt. #7-1 at 114-132. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing

---

[1]The filing date for a petition from an incarcerated *pro se* petitioner is the date the petition was handed over to the prison mail system, not the date it was received and docketed by the federal habeas court. *Houston v. Lack*, 487 U.S. 266, 270-72, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988).

evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert.*

*denied*, 119 S.Ct. 2403 (1999):

> {¶2} In the afternoon on April 26, 2006, defendant flagged down 13-year-old M.E.("the victim"), who was walking in the Superior Avenue and E. 105th Streets area of Cleveland. Defendant asked M.E. her name and age, and she answered his questions truthfully. M.E. got into defendant's car and the two went to defendant's house, where they engaged in consensual sexual intercourse.

> {¶3} Later that day, M.E. told her mother that she had sexual intercourse, and her mother took M.E. to the hospital where a rape kit was performed. The police arrived at the hospital, and M.E. told them that she had sex with a man named Leonard Welch.

> {¶4} In November 2006, the Ohio Bureau of Criminal Identification and Investigation ("BCI") performed DNA tests on the items in M.E.'s rape kit. Male DNA was found on M.E.'s swabs; however, it did not match Leonard Welch's DNA.

> {¶5} BCI determined that the DNA from M.E.'s rape kit was consistent with defendant's DNA. The information was given to the police, who showed M.E. a line-up of photographs "to see if she could identify the suspect that had been identified by BCI." M.E. picked defendant out of the line-up.

> {¶6} In February 2007, BCI again compared the DNA from M.E.'s swabs with defendant's DNA and found them to be consistent.

*State v. Boynton*, 2011 WL 3504849 at *1.

## II.   PROCEDURAL HISTORY

### A.   State Trial Court

On July 10, 2007, the Cuyahoga County, Ohio Grand Jury indicted Petitioner for two counts

of sexual conduct with a minor in violation of ORC 2907.04(A).  ECF Dkt .#7-1 at 1. Petitioner

entered a plea of not guilty to the charges in the Indictment.  *Id.* at 2.  On January 17, 2009,

Petitioner requested and received a referral for psychiatric examination to determine his competency

to stand trial. *Id.* at 3. The trial court held a competency hearing on February 9, 2009, where counsel

for both sides stipulated to the findings in the psychiatric report, which determined that Petitioner

was competent to stand trial.  *Id.* at 4.

Although he was represented by counsel, Petitioner filed a *pro se* motion to dismiss based

upon his right to a speedy trial on April 10, 2009.  *Id.* at 5-8.  The trial court denied the motion.  *Id.*

at 37. The case proceeded to trial on June 3, 2009, where Petitioner was found guilty of both counts in the indictment. *Id.* at 38.

At the sentencing hearing on June 11, 2009, the trial court imposed a sentence of five years of imprisonment on each count, to be served consecutively, for an aggregate sentence of ten years. The trial court further ordered that the sentence imposed was to be served consecutively with the sentence imposed in CR-498233.[2] *Id.* at 39-40.  Petitioner was classified as a Tier II registrant under the Adam Walsh Act.  *Id.*

## B.     Direct Appeal

On July 10, 2009, Petitioner, through new counsel, filed a notice of appeal to the Ohio Court of Appeals for the Fifth District.  *Id.* at 41.  Petitioner raised the following assignments of error in his appellate brief:

ASSIGNMENT OF ERROR NO. 1

DEFENDANT-APPELLANT ASSERTS THAT THE PROSECUTOR PEREMPOTORILY[sic] CHALLENGED THREE AFRICAN-AMERICAN PROSPECTIVE JURORS BECAUSE OF THEIR RACE, IN VIOLATION OF THEIR EQUAL PROTECTION RIGHTS AS GUARANTEED BY THE UNITED STATES CONSTITUTION.

ASSIGNMENT OF ERROR NO. 2

THE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AS COUNSEL FAILED TO TIMELY FILE A RESPONSE TO THE STATE'S MOTION FOR DISCOVERY. THE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AS COUNSEL FAILED TO ENSURE THAT DEFENDANT WAS COMPETENT ENOUGH TO STAND TRIAL.

ASSIGNMENT OF ERROR NO. 3

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT REFUSED TO ALLOW DEFENDANT'S EXPERT D.N.A. WITNESS TO TESTIFY. TRIAL COURT ABUSED ITS DISCRETION WHEN IT SENTENCED THE DEFENDANT TO THE MAXIMUM TERM OF INCARCERATION BY LAW.

---

[2]Petitioner was convicted of one count of gross sexual imposition in CR-498233, which was tried just prior to case at issue.

ASSIGNMENT OF ERROR NO. 4

THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT A CONVICTION IN THIS PRESENT CASE.

ASSIGNMENT OF ERROR NO. 5

THE JURY'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

ASSIGNMENT OF ERROR NO. 6

THE DEFENDANT WAS DENIED HIS FOURTH AMENDMENT RIGHT TO A SPEEDY TRIAL.

ASSIGNMENT OF ERROR NO. 7

THE CUMULTIVE [sic] EFFECT OR ERRORS COMMITTED IN THIS PRESENT CASE DENIED DEFENDANT HIS RIGHT TO A FAIR TRIAL.

*Id.* at 62-92.  On September 9, 2010, the Eighth District Court of Appeals affirmed Petitioner's

conviction and sentence.  *Id.* at 114-132.

**C.**     **Supreme Court of Ohio**

On October 25, 2010, Petitioner, acting *pro se*, filed a notice of appeal to the Supreme Court

of Ohio.  *Id.* at 133-134.   In his memorandum in support of jurisdiction, Petitioner raised the

following propositions of law:

I. APPELLANT ASSERTS THAT THE PROSECUTOR PEREMPOTORILY [SIC] CHALLENGED THREE AFRICAN-AMERICAN PROSPECTIVE JURORS BECAUSE OF THEIR RACE, IN VIOLATION OF THEIR EQUAL PROTECTION RIGHTS AS GUARANTEED BY THE UNITED STATES CONSTITUTION.

II. THE APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AS COUNSEL FAILED TO TIMELY FILE A RESPONSE TO THE STATE'S MOTION FOR DISCOVERY.

III. THE APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AS COUNSEL FAILED TO ENSURE THAT DEFENDANT WAS COMPETENT ENOUGH TO STAND TRIAL.

IV. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT REFUSED TO ALLOW DEFENDANT'S EXPERT D.N.A. WITNESS TO TESTIFY.

V. TRIAL COURT ABUSED ITS DISCRETION WHEN IT SENTENCED THE DEFENDANT TO THE MAXIMUM TERM OF INCARCERATION BY LAW.

VI. THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT A CONVICTION IN THIS PRESENT CASE.

-4-

VII. THE JURY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

VIII. THE APPELLANT WAS DENIED HIS FOURTH AMENDMENT CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL.
IX. THE CULMULTIVE [SIC] EFFECT OR ERRORS COMMITTED IN THIS PRESENT CASE DENIED DEFENDANT HIS RIGHT TO A FAIR TRIAL.

*Id.* at 135-175.  February 2, 2011, the Supreme Court of Ohio dismissed the appeal as not involving

any substantial constitutional question.  *Id.* at 176.

## III.  PETITION FOR POST-CONVICTION RELIEF

On February 22, 20120, Petitioner, with counsel, filed a state petition for post-conviction

relief.  *Id.* at 177-186.  Petitioner raised the following claims in support of his petition:

1. THAT THE DEFENDANT WAS DEPRIVED HIS CONSTITUTIONAL RIGHTS UNDER THE OHIO AND UNITED STATES CONSTITUTION FOR EFFECTIVE ASSISTANCE OF COUNSEL AS THE ACTIONS OF HIS TRIAL COUNSEL SO DEPARTS FROM THE STANDARD APPLICABLE AS TO DEPRIVE THE DEFENDANT-APPELLANT OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

2. DEFENDANT MUST BE COMPETENT ENOUGH TO ASSIST ATTORNEY TO PREPARE FOR HIS TRIAL.

*Id.* at 180, 184.  On March 10, 2010, the trial court denied the petition.  *Id.* at 207.  No appeal was

taken from the trial court's decision.

## IV.  28 U.S.C. § 2254 PETITION

On January 26, 2012, Petitioner, acting *pro se*, filed the instant petition for a writ of habeas

corpus.  ECF Dkt. #1.  Petitioner raises the following grounds for relief:

GROUND ONE: PETITIONER ASSERTS THAT THE PROSECUTOR PEREMPOTORILY (SIC) CHALLENGED THREE AFRICAN-AMERICAN PROSPECTIVE JURORS BECAUSE OF THEIR RACE, IN VIOLATION OF THEIR EQUAL PROTECTION RIGHTS AS GUARANTEED BY THE UNITED STATES CONSTITUTION.

GROUND TWO: PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AS COUNSEL FAILED TO TIMELY FILE A RESPONSE TO THE STATE'S MOTION FOR DISCOVERY.

GROUND THREE: PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AS COUNSEL FAILED TO ENSURE THAT THE DEFENDANT WAS COMPETENT ENOUGH TO STAND TRIAL.

GROUND FOUR: TRIAL COURT ABUSED ITS DISCRETION WHEN IT REFUSED TO ALLOW PETITIONER'S EXPERT D.N.A. WITNESS TO TESTIFY.

GROUND FIVE: THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT SENTENCED THE PETITIONER TO THE MAXIMUM TERM OF INCARCERATION BY LAW.

GROUND SIX: THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT A CONVICTION OF THE PETITIONER IN THIS PRESENT CASE.

GROUND SEVEN: THE JURY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

GROUND EIGHT: PETITIONER WAS DENIED HIS FOURTH AMENDMENT CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL.

GROUND NINE: THE CUMULTIVE [SIC] EFFECT OF ERRORS COMMITTED IN THIS PRESENT CASE DENIED THE PETITIONER HIS RIGHT TO A FAIR TRIAL.

ECF Dkt. #1.

## V.     PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993). However, the Supreme Court has also held that it would be in the interests of the parties and the courts for the merits of a petition to be addressed forthwith if it is clear that the applicant does not even raise a colorable federal claim. *Granberry v. Greer*, 481 U.S. 129, 135 (1987); *Prather v. Rees*, 822 F.2d 1418, 1421-22 (6th Cir. 1987) (lack of exhaustion was properly excused where petition was plainly meritless, the state had not addressed exhaustion, and disposition of the case would not offend federal-state comity).

### A.     Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the

date judgement became final.  28 U.S.C. §2244(d)(1).  The AEDPA statute of limitations is not at issue in this case.

### B.   Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court."  *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated.  *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims.  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law.  *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993) cert. denied, 509 U.S. 907 (1993)(quotation omitted).  In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id*. at 275, 125 S.Ct. 1528; (3) permit the petitioner to

-7-

dismiss the unexhausted claims and proceed with the exhausted claims, *id.* at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031-32 (6th Cir. 2009). The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963). A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C.      **Procedural Default**

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman,* 501 U.S. at 730. For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v.Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed). When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991). In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986). Under the *Maupin* test, a reviewing court must decide:

(1)      whether the petitioner failed to comply with an applicable state procedural rule;

-8-

     (2)      whether the state courts actually enforced the state procedural sanction;

     (3)      whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and

     (4)      if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006). The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the

default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 751.  "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation.  *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985).  If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice.  *Smith v. Murray*, 477 U.S. 527 (1986).

> Simply stated, a federal court may review federal claims that were evaluated on the merits by a state court.  Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004).  The above standards apply to the Court's review of Petitioner's claims.

## VI.   STANDARD OF REVIEW

The undersigned further recommends that the Court find that the AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28  U.S.C. § 2254 on January 26, 2012, well after the act's effective date of April 26, 1996.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998).  Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for a writ of habeas corpus.  The AEDPA provides:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)   resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Further, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."  *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

A.    Decisions of lower federal courts may not be considered.

B.    Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C.    The state court decision may be overturned only if:

1.    It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

2.    the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

3.    'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

-11-

4.      the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.      Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.      Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

(e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993). The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The United States Supreme Court recently observed:

-12-

Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 786-787 (2011).

## VII.  ANALYSIS

### A.  Ground One

Petitioner contends that the State's use of peremptory challenges to exclude three African-American jurors violated his constitutional rights under *Batson v. Kentucky,* 476 U.S. 79, 106 S. Ct. 1712 (1986).  The Eighth District Court of Appeals provided the following analysis of Petitioner's first assignment of error:

{¶ 8} Defendant appeals and raises seven assignments of error for our review. "I. Defendant-appellant asserts that the prosecutor [peremptorily] challenged three African-American prospective jurors because of their race, in violation of [his right to a fair trial]."

{¶ 9} The United States Supreme Court established "a three-step procedure for evaluating claims of racial discrimination in peremptory strikes. First, the opponent of the strike must make a prima facie showing of discrimination. Second, the proponent must give a race-neutral explanation for the challenge. Third, the trial court must determine whether, under all the circumstances, the opponent has proven purposeful racial discrimination." *State v. White* (1999), 85 Ohio St.3d 433, 436, 709 N.E.2d 140 (citing *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69).

{¶ 10} In the instant case, defendant raised a *Batson* objection to three jurors the State wanted to strike. The court asked the State to give a race-neutral explanation for each challenge: the State challenged juror number 11 because it "wasn't comfortable with his responses * * * [h]e seemed kind of guarded in his answers." The State challenged juror number 14 because "she just doesn't seem very intelligent. This is a day care provider who works with children, some who have disabilities, and she doesn't even know what those disabilities stand for. ADHD, she doesn't know what that means. That causes the State some concern." Finally, the State challenged alternate juror number 23 because he "had difficulty answering a lot of questions. He was very surly. A lot of times we got uh-huh, yeah, and nothing more specific."

{¶ 11} Our review of the jury voir dire supports the State's race-neutral reasoning. Additionally, defendant points to nothing in the record indicating a discriminatory intent on behalf of the State. Although defendant argues on appeal that the State's reasoning was a pretext for discrimination, defendant offers no specifics or explanation other than the three jurors in question are African-American. While defendant is not required to prove a pattern of discriminatory strikes to succeed on a Batson claim, the court may take into consideration that other African–American

-13-

individuals, to whom the State did not object, sat on the jury in the instant case. See White.

{¶ 12} This Court gives deference to the trial court's ruling on a *Batson* issue, which is mainly an evaluation of credibility. *State v. Murphy*, 91 Ohio St.3d 516, 530, 2001–Ohio–112, 747 N.E.2d 764. Accordingly, we hold that defendant did not meet his burden of proving racial discrimination, and his first assignment of error is overruled.

*Boynton,* supra, at *1-2.

Here, the trial court applied the correct three-part test to Petitioner's *Batson* challenge, the justification asserted by the State was facially race-neutral, clear and specific, *Batson*, 476 U.S. at 98 & n. 20, and the trial court and Ohio Court of Appeals reasonably credited the prosecutor's race-neutral explanation. Accordingly, the undersigned recommends that the trial court find that the Ohio Court of Appeal's decision was neither contrary to nor an unreasonable application of *Batson,* supra, and that Ground One is meritless.

### B.  Ground Two

Petitioner contends that he received ineffective assistance of counsel due to his trial counsel's failure to respond to the State's request for discovery. The Eighth District Court of Appeals provided the following analysis of the first part of Petitioner's second assignment of error:

{¶ 13} In defendant's second assignment of error, he argues that he was deprived of his right to effective assistance of counsel for two reasons:

{¶ 14} "II(A). Defendant-appellant's trial counsel failed to timely respond to the State's request for discovery thereby denying the defendant-appellant the opportunity to fully argue and submit defendant's expert testimony of the independent D.N.A. results.

{¶ 15} "II(B). Defendant must be competent enough to assist attorney to prepare for his trial."

{¶ 16} "To substantiate a claim of ineffective assistance of counsel, a defendant must demonstrate that (1) the performance of defense counsel was seriously flawed and deficient, and (2) the result of defendant's trial or legal proceeding would have been different had defense counsel provided proper representation. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Brooks* (1986), 25 Ohio St.3d 144, 495 N.E.2d 407. In *State v. Bradley*, the Ohio Supreme Court truncated this standard, holding that reviewing courts need not examine counsel's performance if the defendant fails to prove the second prong of prejudicial effect. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. "The object of an ineffectiveness claim is not to grade counsel's performance." *Id.* at 143, 538 N.E.2d 373.

{¶ 17} In defendant's first claim of ineffective assistance of counsel, he alleges that the court excluded an independent expert DNA analysis that he requested because his attorney failed to timely respond to the State's discovery request. However, our review of the record shows that the court did not permit defendant to introduce this evidence at trial because it was cumulative to the BCI report on DNA introduced by the State. The court also ruled that, in addition to being cumulative, the independent DNA report weighed heavily against defendant, as it concluded that he could not be excluded as a contributor of the DNA found on M.E.'s vaginal swab.

{¶ 18} As the timeliness of defense counsel's discovery responses was not a factor in the court's ruling regarding the independent DNA report, we cannot say that counsel was ineffective concerning this issue.

*Boynton,* supra, at *2-3.

The Eighth District Court of Appeals correctly concluded that, although the trial court chastised defense counsel for his failure to produce the DNA report immediately after he received it, see ECF Dkt. #7-3 at 24-25, the trial court nonetheless predicated its refusal to admit the report because it was cumulative and damaging to Petitioner's case. *Id.* at 38-40. As a consequence, the undersigned recommends that the trial court find the Eighth District Court of Appeals' application of *Strickand* was proper and reasonable, and that Ground Two has no merit.

### C.  Ground Three

Petitioner contends that he received ineffective assistance of counsel because his trial counsel failed to ensure that Petitioner was competent to stand trial. The Eighth District Court of Appeals provided the following analysis of the second part of Petitioner's second assignment of error.

{¶ 19} Defendant's second claim of ineffective assistance of counsel raises a fundamental requirement of due process "that a criminal defendant who is legally incompetent may not be tried." *State v. Thomas*, 97 Ohio St.3d 309, 2002–Ohio–6624, 779 N.E.2d 1017, ¶ 36. See, also, R.C. 2945.37.

{¶ 20} At defendant's request, his competency to stand trial was evaluated by a court appointed psychiatrist. The doctor's expert report concluded that defendant had no mental health issues, he understood the nature of court proceedings, and was competent to stand trial. The State and defense counsel stipulated to these findings. On appeal, defendant claims to suffer from bi-polar disorder and argues that his trial counsel should have been aware of his "mental state" and requested an independent "psychic exam."

{¶ 21} Defendant offers nothing to support his contention that his counsel was ineffective regarding this issue. In *State v. Marshall* (1984), 15 Ohio App.3d 105, 472 N.E.2d 1139, this Court held the following: "Where the trial court refers the defendant for a psychiatric evaluation pursuant to a request by defendant's counsel, and the examining psychiatrist concludes that the defendant is fully capable of assisting in his own defense and of understanding the nature and facts of the charges against him, the psychiatrist's testimony to that effect, given at a hearing conducted

-15-

pursuant to R.C. 2945.37, is sufficient to sustain the court's determination that the defendant is competent to stand trial." *Id.* at paragraph one of the syllabus.

{¶ 22} Defendant failed to demonstrate that his counsel's performance was sub-standard or that a subsequent mental evaluation would have found him incompetent to stand trial. Defendant's second assignment of error is overruled.

*Boynton,* supra, at *3.

In the memorandum of law attached to the petition, Petitioner contends that "trial counsel should have been aware of his client's mental state through his interaction with client, then thereafter request the trail court for independent psychic exam.  Failure to do this denied the Defendant his due process right to effective assistance of counsel."  ECF Dkt. #1 at 21.  However, Petitioner has failed to demonstrate that the Eighth District Court of Appeals' analysis of his ineffective assistance of counsel claim is either contrary to or an unreasonable application of *Strickland.*  Accordingly, the undersigned recommends that the trial court find that Ground Three is meritless.

### D.  Ground Four

Respondent contends that Ground Four is a non-cognizable claim because it states no constitutional violation.  In Ground Four, Petitioner asserts that "the trial court abused its discretion when it refused to allow [his] expert D.N.A. witness to testify."  Federal courts may not issue a writ of habeas corpus on the basis of a perceived error of state law.  *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.1988).  Trial-court errors in evidence law only warrant federal habeas review if "the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir.), cert. denied, 543 U.S. 892, 125 S.Ct. 168, 160 L.Ed.2d 156 (2004) (citing *Estelle v. McGuire*, 502 U.S. 62, 69–70, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)). The Supreme Court has repeatedly emphasized that this standard creates an extremely high bar for a bare due-process objection to the admission of evidence.  See, e.g., *Perry v. New Hampshire*, 132 S.Ct. 716, 723 (2012) (citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959)).

The Eighth District Court of Appeals provided the following analysis of the first part of Petitioner's third assignment of error:

{¶ 23} Defendant's third assignment of error contains two unrelated arguments, the first of which follows:

-16-

{¶ 24} "III(A). The trial court abused its discretion when it refused to allow defendant's expert [DNA] witness to testify."

{¶ 25} Trial courts have broad discretion to admit or exclude evidence, and we review admissibility rulings under an abuse of discretion standard. *State v. Lyles* (1989), 42 Ohio St.3d 98, 99, 537 N.E.2d 221. An abuse of discretion demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748. Pursuant to Evid.R. 403(B), relevant evidence may be excluded if the probative value is substantially outweighed by the prejudicial effect of needlessly presenting cumulative evidence.

{¶ 26} In the instant case, the State admitted into evidence the results of the BCI report comparing DNA extracted from M.E.'s rape kit with defendant's DNA. The BCI report concluded that "Andre Boynton cannot be excluded as the source of the sperm on the vaginal swabs. * * * [T]he expected frequency of occurrence of the major DNA profile identified on the sperm fraction of the vaginal swabs is 1 in 99,500,000,000,000,000,000 unrelated individuals."

{¶ 27} Defendant had the DNA from M.E.'s rape kit independently tested by DDC DNA Diagnostics Center ("DDC"). DDC's report concluded that "[t]he partial mixed DNA profile obtained from [M.E.'s vaginal swab] is consistent with the DNA profiles from [M.E.] and Andre Boynton. Therefore, [M.E.] and Andre Boynton cannot be excluded as contributors to the mixed partial DNA profile obtained from [M.E.'s vaginal swab]. The probability of selecting an unrelated individual at random from the population having a DNA profile matching the partial mixed DNA profile obtained from [M.E.'s vaginal swab] is approximately 1 in 52 individuals."

{¶ 28} The court denied defendant's request to admit the DDC report and testimony from a DDC employee who analyzed the DNA. The court's denial was based on the following reasons: the DDC report did not contradict the State's DNA evidence; the statistical conclusions are "different because they're talking about two different things"; the evidence was cumulative; and the evidence hurts, rather than helps, defendant.

{¶ 29} The court asked defense counsel "how this information is helpful to the defendant as opposed to being damaging to the defendant." Defense counsel responded as follows: "Your honor, based on my conversations that I had with the DNA Diagnostics, along with-in the presence of my client I have nothing to offer to say that this doctor testifying would help his case."

{¶ 30} Accordingly, we find no abuse of discretion in the trial court's decision to exclude evidence that was not only cumulative to evidence already admitted, but was harmful to the party who proffered it.

*Boynton,* supra, at *3-4.

The Eighth District Court of Appeals summarized the trial court's conclusion regarding the testimony of defendant's expert.  The trial court provided the following analysis of the admissibility of the potential testimony:

The Court: [Defense counsel] represented that the defendant's report was different from the State's report because it said that the probability of someone – some other

-17-

individual having the same DNA profile was 1 in 52, whereas the State said it was 1 in 99 kazillion.  I mean, 99, followed by 18 zeros.

Now that's not accurate.  That's a misreading of these two reports.  The 1 in 52 is when the defense expert says the probability of selecting an unrelated individual at random from the population having a DNA profile matching the mixed partial DNA profile obtained in the sample is 1 in 52 individuals.  That's a different statement than was made in the State's expert's report.  It says based on the national  database provided by the FBI, the expected frequency of occurrence of the DNA profile identified in this sample is one in 99 followed by 18 zeros.  Those are two very different statements.  Okay.

I don't see anything in the expert report that does anything but confirm the State's – the State's DNA analysis, and they are both saying that in this mixed sample there is DNA of the victim [ ], and the DNA of Andrea –Andre Boynton.  There is no unidentified DNA.  There is no DNA of a third individual, so I question the admissibility of the defense DNA report because it is cumulative to the State's DNA, so why the defendant wants to come in with evidence that says: And we had an independent DNA testing, you know what?  It matches the DNA results of the State of Ohio.  So that sounds like something that if we permitted the defendant to do it, we might hear an ineffective assistance of counsel appeal down the road in the Court of Appeals.  But laying that aside, we have the evidentiary problem that it's cumulative.  It's saying the same thing that the State's thing says.  It's cumulative, and in the Rules of Evidence you have to come in with new stuff and you're not coming in with new stuff.

Mr. Johnson: Your honor, just to spread on the record, I did advise my client that I did not wish to submit this information.  It's at his request that I submitted the report to the Court and to the State of Ohio.

ECF Dkt. #7-3 at 39-40.

Because the evidence sought to be admitted was cumulative, the trial court did not err in refusing to permit Petitioner's expert to testify.  Moreover, because the trial court's decision did not render the proceeding "so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment," see *McAdoo*, supra, the undersigned recommends that the Court find that Ground Four has no merit.

**E.  Ground Five**

Respondent contends that Ground Five is a non-cognizable claim because it states no constitutional violation.   In Ground Five, Petitioner contends that "the trial court abused its discretion when it sentenced the petitioner to the maximum term of incarceration by law."  The Eighth District Court of Appeals  provided the following analysis of the second part of Petitioner's third assignment of error:

{¶ 31} In the second part of defendant's third assignment of error, he argues that:

-18-

{¶ 32} "III(B). The trial court abused its discretion when it sentenced the defendant to the maximum term of incarceration by law."

{¶ 33} The Ohio Supreme Court set forth the standard for reviewing felony sentencing in *State v. Kalish*, 120 Ohio St.3d 23, 2008–Ohio–4912, 896 N.E.2d 124. See, also, *State v. Foster*, 109 Ohio St.3d 1, 2006–Ohio–856, 845 N.E.2d 470. *Kalish*, in a plurality decision, holds that appellate courts must apply a two-step approach when analyzing alleged error in a trial court's sentencing. "First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard." *Id.* at ¶ 4, 845 N.E.2d 470.

{¶ 34} In determining whether defendant's sentence is contrary to law, we look to R.C. 2929.14(A)(3), which states that prison terms for third degree felonies are between one and five years.

{¶ 35} The court sentenced defendant to the maximum term of five years for each count of unlawful sexual conduct with a minor, which is a third degree felony. Defendant's aggregate prison term of ten years is within the statutory range.

{¶ 36} We also find that the court properly included five years of postrelease control as part of defendant's sentence. See *State v. Jordan*, 104 Ohio St.3d 21, 2004–Ohio–6085, 817 N.E.2d 864. Additionally, the court considered the purpose and principles found in R.C. 2929.11 and the seriousness and recidivism factors of R.C. 2929.12 when sentencing defendant. Specifically, the court relied on a presentence investigation report that was ordered and used in another case against defendant one month before defendant was sentenced in the instant case.

{¶ 37} Accordingly, the court complied with the first prong of *Kalish*, and defendant's sentence is not "clearly and convincingly contrary to law." *Kalish*, at ¶ 4. We now analyze the details of the court's findings and review the decision for an abuse of discretion under the second prong of *Kalish*.

{¶ 38} The record shows that the following factors were considered at defendant's sentencing hearing: M.E. was 13 years old at the time of the offense; defendant's prior criminal record shows that "he has a pattern of behavior for picking up young girls off of the street corner, taking them to apartments or homes and engaging in sexual activity"; defendant was recently convicted by a jury of rape in another case and was awaiting sentencing; and defendant will be classified as a Tier I sex offender in that rape case.

{¶ 39} We find that the court acted within its discretion when it sentenced defendant to the maximum term of five years in prison for each offense. Furthermore, the court did not abuse its discretion in ordering defendant to serve these sentences consecutively. See *State v. Elmore*, 122 Ohio St.3d 472, 2009–Ohio–3478, 912 N.E.2d 582, at ¶ 35 (holding that Foster did not prevent the trial court from imposing consecutive sentences; it merely took away a judge's duty to make findings before doing so"). Defendant's third assignment of error is overruled.

*Boynton,* supra, at *4-5.

-19-

A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only. *Howard v. White,* 76 Fed. Appx. 52, *2 (6ᵗʰ Cir.2003), citing *Travis v. Lockhart*, 925 F.2d 1095, 1097 (8th Cir.1991) and *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir.1988). "[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle*, 502 U.S. at 67. Accordingly, the undersigned recommends that the Court find that Ground Five is meritless.

### F.  Ground Six

In Ground Six, Petitioner challenges the sufficiency of the evidence adduced at trial. The due process clause of the Fourteenth Amendment requires that a criminal conviction be based upon proof beyond a reasonable doubt as to every fact necessary to constitute the offense charged. *In re Winship*, 397 U.S. 358, 363-64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The standard for determining sufficiency of the evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In reaching its determination as to the sufficiency of the evidence, a court may not substitute its determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses. See *id*.; see also *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir.1983).

To determine whether the state court unreasonably applied the sufficiency-of-the-evidence standard of *Jackson v. Virginia*, * * * "[f]irst, [the Court] must ask whether the evidence itself was sufficient to convict.... [and] [t]he inquiry ends if [the Court] determines that there was sufficient evidence." *Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir.2010) (citation omitted). Second, "[i]f [the Court] find[s] that the evidence is insufficient to convict, [the Court] must then apply AEDPA deference and ask whether the state court was 'objectively unreasonable' in concluding that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt." *Id.* (citation omitted). The result of this double deference is that "habeas corpus relief is appropriate based on insufficient evidence only where we find, after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir.2007). On habeas review, federal courts must assume that the jury "resolve[d] conflicts in the testimony," "weigh[ed] the

-20-

evidence," and drew "reasonable inferences" therefrom. *Jackson*, supra, at 319. A court should interfere with a jury verdict only to the extent necessary to guarantee the fundamental protections of due process of law.

The Eighth District Court of Appeals provided the following analysis of Petitioner's fourth assignment of error:

{¶ 40} Defendant's fourth and fifth assignments of error will be addressed together, and they read as follows:

{¶ 41} "IV. Defendant-appellant asserts that his conviction is against the sufficiency of the evidence.

{¶ 42} "V. Defendant-appellant asserts that his jury verdict is against the manifest weight of the evidence."

{¶ 43} When reviewing sufficiency of the evidence, an appellate court must determine, "after viewing the evidence in a light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492.

{¶ 44} The proper test for an appellate court reviewing a manifest weight of the evidence claim is as follows:

{¶ 45} "The appellate court sits as the 'thirteenth juror' and, reviewing the entire record, weighs all the reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541.

{¶ 46} Defendant was convicted of two counts of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A), which states that "[n]o person who is eighteen years of age or older shall engage in sexual conduct with another * * * when the offender knows the other person is thirteen years of age or older but less than sixteen, or the offender is reckless in that regard." The jury also found that defendant was ten or more years older than the victim, which under R.C. 2907.04(B)(3) categorizes his convictions as third degree felonies.

{¶ 47} M.E. testified that in April 2006, she ran away from home for a week and a half and stayed at various people's houses in her neighborhood. During this time she met defendant and told him her real name and age, which was 13. She remembers this because defendant's response was, "Age ain't nothing but a number." M.E. testified that she and defendant had sexual intercourse, and defendant was not wearing a condom when he ejaculated inside her. M .E. also stated that defendant performed oral sex on her. Shortly after this incident, M.E.'s parents found her walking on Superior Avenue. She got in the car with her parents, who asked her where she had been. M.E. showed them some of the houses and told them she had sexual intercourse with a 20-year-old male named Leonard Welch.

{¶ 48} M.E. testified that she did not tell her parents that she also had sex with defendant while she was a runaway. "[A]t that time when I got in that car my mother asked me, she said who else did you have sex with and I just told her Leonard Welch. That's the only name I brought attention to my mother." Asked why, M.E. replied, "Because I ain't want to make my mother feel like [her] daughter just out there giving her body away."

{¶ 49} M.E.'s mother testified that she took M.E. to the hospital after finding her walking the streets, because M.E. said she had been having sex while she was gone.

{¶ 50} Two police officers testified that they took M.E.'s statement after the rape kit was completed at the hospital. At the time, M.E. gave the police the name Leonard Welch. When the DNA evidence showed that the sperm from M.E.'s rape kit was defendant's, rather than Welch's, police prepared a photo array for M.E. that included defendant's picture. The police told M.E. that the DNA evidence did not implicate Welch. The police did not mention defendant's name. M.E. identified defendant as the suspect.

{¶ 51} Defendant argues that M.E. was not credible and her testimony was inconsistent because she initially identified another male as the offender, and did not identify him until over a year after the date of the offense. Defendant also argues that the photograph line-up and DNA test results were "bogus."

{¶ 52} After reviewing the record, we find that the evidence supports defendant's convictions. M.E. offered a plausible explanation of why she withheld defendant's name at first, and defendant's DNA was found on M.E.'s vaginal swab. There was sufficient evidence to show that defendant, who was 30 years old at the time, engaged in sexual conduct with M.E., after M.E. told defendant she was 13 years old. The jury did not lose its way in convicting defendant of unlawful sexual conduct with a minor. Defendant's fourth and fifth assignments of error are overruled.

*Boynton,* supra, at \*5-6.

Based upon the facts, as stated by the Ohio Court of Appeals, there was sufficient evidence upon which to convict Petitioner on both counts in the Indictment. Accordingly, the undersigned recommends that the Court find that the Eighth District Court of Appeals' application of *Jackson,* supra, was proper and reasonable, and that Ground Six has no merit.

### G.  Grounds Seven and Nine

Respondent contends that Grounds Seven and Nine are non-cognizable claims because they state no constitutional violation. In Ground Seven, Petitioner challenges his conviction based upon the manifest weight of the evidence, and in Ground Nine, he challenges his conviction based upon the cumulative errors that occurred during his trial.

The undersigned recommends that the Court dismiss Ground Seven because a claim that a conviction is against the manifest weight of the evidence is not cognizable in federal habeas corpus

review. *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir.1985); *Walker v. Timmerman-Cooper*, No. 1:05CV103, 2006 WL 3242101 (S.D. Ohio Oct. 5, 2006).  Manifest weight claims are derived from purely state law whereby the state appellate court sits as a "thirteenth juror and disagrees with fact finder's resolution of conflicting testimony" and finds that the "jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Tibbs v. Florida*, 457 U.S. 31, 41-47 (1982); *State v. Thompkins*, 78 Ohio St.3d 380, 389, 678 N.E.2d 541, 546-548 (1997)(superseded by state constitutional amendment on other grounds, *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997), cert. denied 523 U.S. 1125 (1998)), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

Likewise, the undersigned recommends that Petitioner's claim of cumulative error in Ground Nine is not cognizable on habeas corpus review.  The Sixth Circuit has held that "post-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief."  *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir.2005). See also *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir.2011) (noting that, post-AEDPA, petitioner's cumulative error claim is not cognizable on habeas review); *Hoffner v. Bradshaw*, 622 F.3d 487, 513 (6th Cir.2010) (same); *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir.2002) (stating that "[t]he Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief").

Accordingly, the undersigned recommends that the Court find that Ground Seven and Ground Nine are meritless.

### H.  Ground Eight

In Ground Eight, Petitioner contends that the trial court violated his right to a speedy trial.[3] The Eighth District Court of Appeals provided the following analysis of Petitioner's sixth assignment of error:

> {¶ 53} "VI. Defendant-appellant contends that the trial court denied his statutory and constitutional rights to a speedy trial."

---

[3]An alleged violation of a state speedy trial statute is not remediable through a federal habeas corpus petition. *Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir.), *cert. denied* 514 U.S. 935 (1998).

{¶ 54} Specifically, defendant argues that he was brought to trial "45 days over the time for which he was required to be brought to trial."

{¶ 55} When an appellate court reviews an allegation of a speedy trial violation, it "should apply a de novo standard of review to the legal issues but afford great deference to any findings of fact made by the trial court." *State v. Barnes*, Cuyahoga App. No. 90847, 2008–Ohio–5472, ¶17.

{¶ 56} R.C. 2945.71(C)(2) requires the State to bring a defendant accused of committing a felony to trial within 270 days after his arrest. "[E]ach day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(E). However, this provision does not apply to defendant in the instant case because he was being held in jail pending trial in at least one other case when he was indicted for the instant case on July 10, 2007. Additionally, various events toll speedy trial days, including for example, defense requested continuances and requests for discovery. R.C. 2945.72(E) and (H).

{¶ 57} On April 20, 2009, the court denied defendant's motion to dismiss for lack of a speedy trial, finding that the time had not run due to defense counsel's requests for continuances.

{¶ 58} Upon our independent review of the record, we find that defendant's speedy trial rights were not violated. Defendant's speedy trial time was tolled from July 27, 2007, when he requested discovery, through November 30, 2007, when the court held a pretrial after multiple defense-requested continuances. Time was tolled again from January 14, 2008 through April 28, 2008, based on further continuances requested by defendant, who was awaiting trial in three other felony cases at the time. Defendant's speedy trial time was tolled again, starting on May 20, 2008 and lasting until his trial on June 3, 2009, because of various motions that defendant filed, including a request for a competency evaluation, a request for an independent DNA analysis, and a motion to disqualify the judge. See R.C. 2945.72(E) (stating that a defendant's speedy trial time may be extended by "[a]ny period of delay necessitated * * * or instituted by the accused"). Defendant's sixth assignment of error is overruled.

*Boynton,* supra, at *7.

The court's consideration of a claim that Ohio has violated its speedy trial rules is limited to a determination of whether the state's action has violated the petitioner's Sixth Amendment right to a speedy trial. *Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir.1994), *cert. denied*, 514 U.S. 1024, 115 S.Ct. 1376, 131 L.Ed.2d 230 (1995); *Massenburg v. Pitcher*, No. 00–10503, 2003 WL 88118, at *8 (E.D.Mich. Jan.10, 2003). The Sixth Amendment to the U.S. Constitution guarantees the accused a speedy trial in all criminal prosecutions. The right to a speedy trial is "fundamental," and is imposed on the states by the Due Process Clause of the Fourteenth Amendment. *Barker v. Wingo*, 407 U.S. 514, 515, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The Supreme Court said that the states "are free to prescribe a reasonable period consistent with constitutional standards." *Id.* at 523.

The *Barker* Court set out four criteria by which an alleged violation of the constitutional right to a speedy trial is to be judged: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant. *Barker*, 407 U.S. at 530; *Norris v. Schotten*, 146 F.3d 314, 326 (6th Cir.), *cert. denied* 514 U.S. 935 (1998).  None of the four factors is either necessary or sufficient to finding a deprivation of the right to a speedy trial, but must be balanced with other relevant circumstances. *Id.* at 533.  Prejudice, the most important of the considerations, is assessed in light of three interests to the defendant: (1) to prevent oppressive pretrial incarceration; (2) to minimize the anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Id.* at 532.  In a subsequent decision, *Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), the balance was described as "whether [the] delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." *Id.* at 651.

The Ohio Court of Appeals did not explicitly undertake the four-part analysis set forth in *Barker.*  Where a state court decides a constitutional issue without extended discussion, the federal habeas court should focus on the result of the state court's decision, applying the correct standard in its analysis. *Harris v. Stovall*, 212 F.3d 940, 943 n. 1 (6th Cir.2000), *cert. denied*, 532 U.S. 947, 121 S.Ct. 1415, 149 L.Ed.2d 356 (2001).

The *Barker* Court noted that the first factor is "a triggering mechanism," instructing that "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530; *Maples v. Stegall*, 427 F.3d 1020, 1025 (6th Cir.2005); *Norris*, 146 F.3d at 326.  Thus, the first inquiry is "whether there was a presumptively prejudicial delay" to warrant further investigation of the *Barker* factors. *Norris*, 146 F.3d at 326–327.  The length of the delay is measured from the date of the indictment or the date of the arrest, whichever is earlier. *Maples*, 427 F.3d at 1026.  Courts have found that a delay of one year or longer "marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* inquiry." *Doggett* at 652, n. 1.

Petitioner was indicted[4] on July 10, 2007 and brought to trial on June 5, 2009.  ECF Dkt. #7-1 at 49.  Accordingly, the almost two-year delay is presumptively prejudicial.  However, a review of the trial court's docket, ECF Dkt. 7-1 at 49- 60, reveals that the numerous continuances were predicated upon discovery issues, plea negotiations, the unavailability of counsel, and the resolution of defense motions.  The reason for delay is important because it determines the amount of proof that a petitioner must proffer in order to show prejudice. See *United States v. Brown*, 169 F.3d 344, 350–51 (6th Cir.1999) (holding that the Sixth Amendment was violated because a five-year pretrial delay was primarily attributable to the government's negligence).  This inquiry, however, is not a search for a blameless party. The Court is instead concerned with who "is more to blame for that delay." *Doggett*, 505 U.S. at 651, 112 S.Ct. 2686.

Although Petitioner filed a *pro se* motion to dismiss based upon his speedy trial rights, he is nonetheless responsible for many delays of the trial, including his motions for a competency evaluation and an independent examination of the DNA evidence, as well as his affidavit to disqualify the trial judge.  Furthermore, on at least two occasions, his trial counsel was not available to proceed to trial.  Of greatest import, Petitioner has not articulated any oppressive pretrial incarceration, anxiety and concern during the pre-trial phase, or any impairment of his defense.

Therefore, based upon Petitioner's responsibility for a large portion of the delay, as well as his failure to demonstrate prejudice, the undersigned recommends that the trial court find that no Sixth Amendment violation occurred and that Ground Eight has no merit.

---

[4]Petitioner was in jail for another crime at the time he was indicted in this case.

**VIII.  CONCLUSION**

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice.


DATE: July 30, 2012                                      */s/ George J. Limbert*
                                                          GEORGE J. LIMBERT
                                                          UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).